Filed 8/4/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300323 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA390560) |
| v. | |
| JESSE CALDELARI GALVAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Jesse Caldelari Galvan challenges the trial court's denial of his petition for resentencing under Penal Code[1] section 1170.95 on his murder conviction. The court found that Galvan was ineligible for relief because his conviction included a felony-murder special circumstance (see § 190.2, subd. (a)(17)), which required the jury to find beyond a reasonable doubt that he was a major participant in the underlying robbery and that he acted with reckless indifference to human life. A defendant who meets those criteria could still be convicted of murder under recent changes to the felony murder rule and, therefore, is ineligible for resentencing under section 1170.95.

Galvan contends that the trial court erred because, after his conviction, our Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) clarified the meaning of "major participant" and "reckless indifference to human life," and according to Galvan, the facts in this case do not meet the clarified standard. We affirm the trial court's order because the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95. In reaching this conclusion, we agree with the recent decision in *People v. Gomez* (June 29, 2020, D076101) ___ Cal.App.5th ___ [2020 WL 3960294] (*Gomez*), albeit under somewhat different reasoning. We disagree with *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011 (*Torres*), and the result in *People v. Smith* (2020)

_____

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

49 Cal.App.5th 85, review granted July 22, 2020, S262835
(*Smith*) because it is inconsistent with our approach to the
construction of section 1170.95.

## FACTS AND PROCEEDINGS BELOW

In our unpublished opinion in Galvan's direct appeal
(*People v. Galvan* (Apr. 8, 2016, B259576) [nonpub. opn.]), we
described the facts of his case:

"On December 21, 2009, Fereidoun Kohanim[2] and his
wife visited their sons, Sami and Ramin Kohanim, at the family's
98 Cents Store on Venice Boulevard.  Around 4:00 p.m. Sami
left his father to watch the cash register while Sami used the
rest room and went to the back office.  Hearing a loud noise,
Sami ran to the front of the store where he found his father
lying on the floor.  A man was running out of the store.

"Fereidoun died of a single gunshot wound to the back
of his head.  A damaged .38-caliber bullet was recovered from
Fereidoun's body.

"A surveillance video showed three men enter the store.
One of the men wore a black beanie, a gray long sleeve shirt, and
a towel covering his neck.  There was a light spot, which could
have been a small bandage, on his left cheek.  As this person
held open a bag and said something to Fereidoun, one of the
other men pointed what appeared to be a chrome revolver at
Fereidoun, who was standing behind the counter.  The gunman
then pointed the gun at Fereidoun's wife and back at Fereidoun,
who tried to slap the gun away.  The third man walked around

---

[2] "[2] Members of the same family are referred to by first
name to avoid confusion.  [(*People v. Galvan, supra*, B259576.)]"

the counter and Fereidoun moved toward him. The gunman then shot Fereidoun in the back of the head.

"Several still photographs were taken from the surveillance video. These photos were shown to a Baldwin Park police officer who identified appellant as the suspect with a towel around his neck wearing the black beanie and gray long sleeve shirt. The officer stated that a bandage appeared to be covering a tattoo on appellant's face, and appellant had tattoos on his head and neck that were covered by the beanie and towel.

"On July 7, 2010, police searched a home in Baldwin Park where appellant and his girlfriend were living in a converted garage. Police recovered a bluish-black beanie similar to the one worn by one of the men in the video. In a closet in the garage police also found a blue steel[3] '.38 Special' revolver loaded with six rounds. Police found three more .38 Special rounds with three other bullets in a paper bag, and 24 rounds of .38 Special cartridges on a shelf. It could not be conclusively determined whether the .38 Special revolver recovered in the search was the murder weapon." (*People v. Galvan, supra*, B259576.)

On the day of the search, and again at trial, Galvan's girlfriend identified Galvan in video footage of the robbery as the man in the gray sweatshirt. (*People v. Galvan, supra*, B259576.)

A jury convicted Galvan of first degree murder (§ 187) and found true a felony-murder special circumstance. (§ 190.2,

---

[3] "[3] The revolver seen in the video appeared to be chrome, not blue steel, but Officer Cortina, who was present during the search and had seen the video, explained the difference in appearance could have been due to lighting conditions. [(*People v. Galvan, supra*, B259576.)]"

4

subd. (a)(17).)  The trial court exercised its discretion to sentence Galvan, who was under age 18 at the time of the offense, to 25 years to life for the murder, rather than life without the possibility of parole.  (See § 190.5, subd. (b).)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine.  Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.)  The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder under the new law and resentencing those who were so convicted.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Galvan filed a petition for resentencing on March 29, 2019. The trial court summarily denied the petition because the jury found beyond a reasonable doubt that Galvan was a major participant in the underlying felony and acted with reckless indifference to human life. (See §§ 189, subd. (e)(3), 1170.95, subd. (a)(3).)

## DISCUSSION

The outcome of this case depends on the operation of section 1170.95, the statute the Legislature enacted to provide a procedure for defendants who were previously convicted of murder, but who could no longer be convicted because of the changes to the law enacted by Senate Bill No. 1437, to petition to vacate their convictions and be resentenced.

The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility:  (1) He was charged with murder in a manner "that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" (§ 1170.95, subd. (a)(1)); (2) He "was convicted of" or pleaded guilty to "first degree or second degree murder" (§ 1170.95, subd. (a)(2)); and (3) He "could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective" as a part of Senate Bill No. 1437 (§ 1170.95, subd. (a)(3)). As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life.

Upon receipt of a petition, the trial court reviews it to determine whether the petitioner has made a prima facie case for relief.  (§ 1170.95, subd. (c).)  If the petitioner meets this requirement, the court issues an order to show cause and holds a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden of proving beyond a reasonable doubt

that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

In this case, the trial court denied Galvan's petition at the first stage of prima facie review under section 1170.95, subdivision (c).[4] A denial at that stage is appropriate only if the record of conviction demonstrates that "the petitioner is ineligible for relief as a matter of law." (*People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 329, review granted Mar. 18, 2020, S260493; accord, *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, fn. 10, review granted Mar. 18, 2020, S260598.) This is a purely legal conclusion, which we review de novo. (See *People v. Verdugo*, *supra*, at p. 328, fn. 8.)

The trial court justified its decision on the ground that the special circumstance finding showed as a matter of law that Galvan was ineligible for resentencing. The court reached this conclusion by comparing the requirements for felony murder under Senate Bill No. 1437 with those for the felony murder special circumstance under section 190.2, subdivision (a)(17). The requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment

_____

[4] Galvan filed his petition for resentencing through a privately retained attorney and requested that the attorney be appointed to represent him in the proceedings. The trial court denied the petition without appointing the attorney or requesting briefing from the prosecution, steps that the court would have been required to take at the second stage of prima facie review. (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493.) We thus infer that the court denied the petition at the first stage of prima facie review.

of Senate Bill No. 1437. In both instances, the defendant must have either actually killed the victim (§§ 189, subd. (e)(1), 190.2, subd. (b)); acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in the killing (§§ 189, subd. (e)(2), 190.2, subd. (c)); or been a major participant in the underlying felony and acted with reckless indifference to human life (§§ 189, subd. (e)(3), 190.2, subd. (d); see *In re Ramirez* (2019) 32 Cal.App.5th 384, 393). By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law. Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated. (See § 1170.95, subd. (a)(3).)

Galvan argues that this conclusion does not follow because after his conviction of felony murder, the Supreme Court decided *Banks* and *Clark*, which decisions represent a significant shift in the interpretation of the concepts of major participation and reckless indifference to human life. In *Banks*, the Court evaluated existing United States Supreme Court jurisprudence on the issue and set out a series of considerations relevant to determining whether a particular defendant was a major participant in the underlying felony. (See *Banks*, *supra*, 61 Cal.4th at p. 803.) The Court did the same in *Clark* with respect to whether the defendant acted with reckless indifference to human life. (See *Clark*, *supra*, 63 Cal.4th at pp. 618–622.) These new considerations clarified the requirements for the felony murder special circumstance so significantly that courts have allowed defendants to challenge the validity of pre-*Banks* and *Clark* special circumstances findings via habeas corpus,

making an exception to the rule that ordinarily bars a defendant from challenging the sufficiency of the evidence in a habeas petition. (See, e.g., *In re Scoggins* (2020) 9 Cal.5th 667, 673–674; *In re Miller* (2017) 14 Cal.App.5th 960, 979 (*Miller*).)

The Attorney General argues, however, that whether the facts comply with *Banks* and *Clark* does not matter because section 1170.95 is not the proper vehicle for such a challenge. We agree.

On this point there are conflicting cases. In *Gomez, supra,* ___ Cal.App.5th ___ [2020 WL 3960294], the Fourth District reached the same conclusion as we do in this case. In *Torres, supra,* 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, and *Smith, supra,* 49 Cal.App.5th 85, review granted July 22, 2020, S262835, by contrast, our colleagues in Division 5 held that a defendant may challenge a felony murder special circumstance by means of a petition under section 1170.95.

In *Gomez*, the court reasoned that the defendant's petition was "in effect a challenge to the sufficiency of the evidence to support the . . . special circumstance findings against [the defendant]." (*Gomez, supra,* ___Cal.App.5th ___ [2020 WL 3960294 at p. *9].) If the defendant had filed a habeas petition, the case would have been decided according to that standard. (See *Miller, supra,* 14 Cal.App.5th at p. 974.) This would mean that the defendant would "bear the burden of showing the findings must be vacated on the ground there is insufficient evidence to support them." (*Gomez, supra,* ___ Cal.App.5th ___ [2020 WL 3960294 at p. *10].) By contrast, in proceedings under section 1170.95, if a defendant can make a prima facie case that defendant is entitled to relief, the burden shifts to the prosecution to prove the defendant's ineligibility

beyond a reasonable doubt.  (See § 1170.95, subd. (d)(3).)
Rather than merely vindicating defendant's due process right
to challenge the sufficiency of the evidence supporting a finding
against the defendant, defendant would in effect obtain a new
trial, at which the prosecution would bear the burden of proving
matters that may not have been seen as relevant at the original
trial more than a decade earlier.  The court concluded that the
prosecution should not be required to bear this burden, and that
"a petition for writ of habeas corpus is the appropriate vehicle . . .
to challenge [defendant's] special circumstance findings."
(*Gomez*, *supra*, ___ Cal.App.5th ___ [2020 WL 3960294 at p. *10].)

Although we do not necessarily agree with all the reasoning
in *Gomez*, we believe it was correctly decided.  We analyze the
issue by turning to the language of section 1170.95 itself:  In
order to be eligible for resentencing, a defendant must show that
he or she "could not be convicted of first or second degree murder
because of changes to Section[s] 188 or 189 made effective" as
part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)

In this case, that requirement is not met.  Although
Galvan is asserting that he could not now be convicted of murder,
the alleged inability to obtain such a conviction is not "because
of changes" made by Senate Bill No. 1437, but because of the
clarification of the requirements for the special circumstance
finding in *Banks* and *Clark*.  Nothing about those requirements
changed as a result of Senate Bill No. 1437.  Just as was the case
before that law went into effect, the special circumstance applies
to defendants who were major participants in an underlying
felony and acted with reckless indifference to human life.  If
Galvan is entitled to relief based on *Banks* and *Clark*, the avenue
for such relief is not section 1170.95, but a petition for writ of

10

habeas corpus. (See *Gomez, supra*, ___ Cal.App.5th ___ [2020 WL 3960294 at p. *10].)

It is not only unnecessary, in light of the existence of habeas relief, to allow Galvan to proceed with a petition under section 1170.95, but it would also give him an enormous advantage over other similarly situated defendants based solely on the date of his conviction. Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding. If the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings. (*In re Saldana* (1997) 57 Cal.App.4th 620, 625; see also *In re Harris* (1993) 5 Cal.4th 813, 829 ["in the absence of strong justification, any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for a writ of habeas corpus"].) But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt. (See *Gomez, supra*, ___ Cal.App.5th ___ [2020 WL 3960294 at p. *10].) Yet nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants.

The two cases that have reached contrary conclusions are *Torres* and *Smith*. In *Torres*, the court, after holding that the defendant had made a prima facie case under section 1170.95, addressed the habeas issue only in a footnote, noting that the defendant had previously filed a habeas petition

11

to challenge the special circumstance finding, which the Court of Appeal summarily denied.  The court explained that this was not determinative because a summary denial of a habeas petition does not establish law of the case or have a res judicata effect in future proceedings.  (*Torres*, *supra*, 46 Cal.App.5th at p. 1180, fn. 4, review granted June 24, 2020, S262011.)  *Torres* is inconsistent with our view that section 1170.95 does not allow a *Banks* and *Clark* challenge to a felony murder special circumstance and that habeas corpus is the correct procedure. In *Smith*, the court did not address the possibility of habeas relief at all.  Instead, it held that the existence of a felony-murder special circumstance does not bar a petitioner from relief under section 1170.95 because no court had yet determined the validity of the special circumstance following *Banks* and *Clark*.  (*Smith*, *supra*, 49 Cal.App.5th at p. 93, review granted July 22, 2020, S262835.)  Although the case did not address the question whether habeas corpus relief was the appropriate remedy in a special circumstance felony murder case, the result in *Smith* is inconsistent with our view that section 1170.95 is not the correct vehicle for a *Banks* and *Clark* special circumstance challenge.

Our holding is not inconsistent with the legislative purpose of Senate Bill No. 1437 "to restore proportional responsibility in the application of California's murder statute" (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Apr. 24, 2018, p. 3) by eliminating harsh sentences for defendants who played only a relatively minor role in a felony in which a victim was killed, while still retaining murder liability for more culpable defendants.  In conclusion, given the clear language of section 1170.95, its legislative history, and to avoid unequal application of the law to defendants similarly situated,

12

we will not expand the section beyond its plain language. Therefore, the trial court did not err by denying Galvan's petition at the first stage of review.

## DISPOSITION

The trial court's order is affirmed.
<u>CERTIFIED FOR PUBLICATION</u>.



ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.